FILED

2026 Jan-22  PM 03:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### (SOUTHERN DIVISION)

| | | |
|---|---|---|
| D.A.H. by his next friend and parent, | ) | |
| Anthony Hamley, Democratic | ) | |
| Socialists of America, and Hoover | ) | |
| High School Young Democratic | ) | |
| Socialists of America, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. |
| vs. | ) | |
| | ) | |
| Hoover City Schools, Hoover City Board | ) | |
| of Education, Kevin Maddox, and | ) | |
| Kristi Sayers, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs D.A.H., by and through his next friend and parent Anthony Hamley, Democratic Socialists of America ("DSA"), and Hoover High School Young Democratic Socialists of America ("HHS-YDSA") complain as follows:

## JURISIDICTION AND PRELIMINARY STATEMENT

1.      This action is based on and seeks to redress violation under the federal Equal Access Act, 20 U.S.C. §§ 4071, the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 et. seq. and the First and Fourteenth Amendments to the United States Constitution.  Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S. § 1983.

2.      Plaintiffs sought to establish a Young Democratic Socialists of America ("YDSA") high school club at Hoover High School ("HHS").  HHS approval of a club allows students to advertise the club at school and to meet on campus.

3.      Although the YDSA club met all requirements for approval and was initially approved on September 8, 2025, a few days later, after students posted flyers and invited other students to meet and learn about issues important to YDSA on September 16 2025, HHS revoked that approval.  There is little doubt that it was the content of the Plaintiffs' speech and the political, social justice and philosophical views of YDSA as an expressive association that caused Defendants to make the decision to revoke club approval.

4.      Indeed, shortly after Plaintiffs were denied approval for a YDSA student club, the Defendants authorized a Hoover High School chapter of Club America, a Turning Point USA student organization.  Both Club America and YDSA promote political, social justice and philosophical views/policies but only Club America was given access to HHS.  Such viewpoint discrimination violates the Equal Access Act and is antithetical to the Constitutional values of free speech, freedom of association and equal protection.

5.      Defendants' revocation of HHS-YDSA's club approval denied Plaintiffs equal access and fair opportunity to meet, publicize their group, and engage in other expressive acts on the basis of the content of their speech.  That

action violates the First Amendment to the United States Constitution, and the Due Process and Equal Protection Clauses of the Fourteenth Amendments to the United States Constitution.

6.    It also violates the Equal Access Act ("EAA"), a federal statute that applies when a high school that receives federal funds allows *any* "noncurriculum related student clubs" (meaning a club that is not directly related to a class offered at the school) to operate on campus. HHS receives federal funds. Therefore, the EAA requires it to provide equal access to *all* student groups and prohibits discrimination based on political, philosophical, religious, or other content of the speech at such meetings. Put simply, under the EAA, if a school opens its doors to any student-initiated, non-curricular club, it must offer the same opportunity to all such clubs and may not discriminate based on the club's subject matter or viewpoint.

7.    Plaintiffs seek access on an equal basis to HHS's facilities for the purpose of promoting the HHS-YDSA club and meeting with other students interested in the issues and agenda of HHS-YDSA and for other purposes that non-curriculum related high school clubs engage in. To this end, Plaintiffs seek a declaration of rights under the EAA and the relevant amendments to the United States Constitution, an injunction restraining and enjoining Defendants from directly or indirectly denying Plaintiffs access to or use of the facilities of at HHS on a basis equal to that allowed to other student clubs and from denying Plaintiffs the ability to

communicate and advertise about their club meetings.  Finally, Plaintiffs also seek

damages, in at least a nominal amount, as well as attorneys' fees.

## VENUE & PARTIES

8.      Plaintiffs reside in Jefferson County, Alabama.  Defendant Hoover City

Board of Education maintains its principal offices in Jefferson County, AL.  On

information and belief, Defendants Kevin Maddox and Kristie Sayers reside in either

Jefferson or Shelby County, AL.  The events that give rise to this action occurred in

Jefferson County, AL, where HHS is located.

9.      D.A.H. is a student at HHS and a member of the student group YDSA

and DSA.  D.A.H is a minor and sues here by his next friend and parent Anthony

Hamley.   Plaintiff D.A.H. is in the twelfth grade.

10.      Democratic Socialists of America ("DSA") is a non-profit organization

incorporated in Washington D.C.  DSA is a membership-based organization, with

tens of thousands of members nationwide and more than 1,000 in Alabama.  DSA

includes a youth and student section YDSA, consisting of college and high school

campus chapters across the country.  More than fifteen (15) Hoover High School

students expressed an interest in forming a YDSA chapter and many regularly

participate in meetings and activities organized and/or assisted by DSA

representatives.  Numerous Hoover High students including D.A.H. are members of

DSA.  DSA brings suit on its own behalf and on behalf of its members.

4

11.     Hoover High School Young Democratic Socialists of America (HHS-YDSA) is an unincorporated association of students who seek to establish a YDSA chapter at Hoover High School. HHS-YDSA has approximately twenty-two students who participate in the groups meetings and activities.

12.     Defendant Hoover City Schools is a public-school system that serves the City of Hoover, AL. Hoover City Schools was established in 1987 when it separated from the Jefferson County School System.  Hoover City Schools has sixteen schools including two high schools.  Hoover City Schools maintains its central office at 2810 Metropolitan Way, Hoover AL 35243.  Hoover City Schools is a person within the meaning of 42 U.S.C § 1983 and was acting under the color of law at all times relevant to this complaint.

13.     Defendant Hoover City Board of Education is a public-school board responsible for policy development, budget oversight, supervising the superintendent, evaluating and approving curricula, and overseeing maintenance and improvement of Hoover City Schools' facilities.  The members of the Hoover City Board of Education are appointed by the Hoover City Council.  The Hoover City Board of Education maintains its offices at 2810 Metropolitan Way, Hoover AL 35243.  Hoover City Board of Education is a person within the meaning of 42 U.S.C § 1983 and was acting under the color of law at all times relevant to this complaint.

14.     Defendant Kevin Maddox is the superintendent of Hoover City Schools.  As the superintendent, Maddox is charged with overseeing the day to day operations of Hoover City Schools.  He is appointed and supervised by the members of the Hoover City Board of Education.  At all relevant times, Mr. Maddox acted under color of state law when he intervened and ordered revocation of the approval of the Hoover Chapter of YDSA as a recognized student club at HHS.  He is sued in his individual and official capacities and for the purpose of ensuring that the Plaintiffs can obtain relief in the event they prevail on one or more claims.

15.     Defendant Kristi Sayers is the principal of Hoover High School.  She was acting under color of state law when she revoked HHS's approval of HHS-YDSA as a recognized student club.  She is sued in her individual and official capacities and for the purpose of ensuring that the Plaintiffs can obtain relief in the event that they prevail on one or more claims.

## FACTUAL ALLEGATIONS

### A.     APPROVAL AND SUBSEQUENT REVOCATION OF YDSA CLUB

16.     In February 2025, D.A.H. sought approval for HHS-YDSA from HHS's administrators.  Pursuant to HHS's policy governing the approval of student-led clubs, D.A.H. submitted a club application that included the signatures of 15 students and the name of a faculty sponsor.

17.    In late February 2025, D.A.H. spoke to Mary Johnson (the assistant principal in charge of student clubs at HHS) about the status of his application for club approval.  For approximately three months, D.A.H. continued to reach out to Assistant Principal Johnson in person and via email seeking an update on the status of the HHS-YDSA club application but she avoided answering his requests for information about the status of the application.

18.    On May 22, 2025, Assistant Principal Johnson finally met with D.A.H. about the request that HHS approve HHS-YDSA as a student club.  During this meeting, Assistant Principal Johnson informed D.A.H. that the HHS-YDSA club application would be deferred until the start of the next school year because of the "political climate."

19.    After the meeting, D.A.H. emailed Assistant Principal Johnson about the decision to defer his request for club approval and requested information on how to appeal this decision.  Johnson responded to D.A.H.'s email stating that she had spoken to former principal Dr. Hogan about his application and that the priority was closing out the school year.  Johnson assured D.A.H. that he would not need to resubmit the application next school year.  She also informed him that there was no process for appealing the decision to defer his club approval application.

20.    On September 5, 2025, Assistant Principal Johnson emailed D.A.H. to request additional information about the application for HHS-YDSA, and D.A.H.

responded by providing that information.  During the week of September 8, 2025, Assistant Principal Johnson told D.A.H that the HHS-YDSA club was "good to go," meaning that it was approved.

21.    On September 15, 2025, D.A.H. and other HHS students posted flyers announcing that HHS-YDSA was having a meeting on September 26, 2025 in Room C238 between 3:45 and 5:00 p.m.  The flyer stated that the purpose of the club was "to build the power of students, campus communities and Youth to fight for Equality, Justice and Democratic Socialism." The flyers were posted, among other places, on the walls in the stairwells, on walls over water fountains and on the walls leading to the competition or PE gyms. D.A.H. had paid approximately $16 to have forty (40) flyers color printed.

22.    On September 16, 2025 at 12:58 p.m., D.A.H. emailed Assistant Principal Johnson to notify her that all the flyers for the HHS-YDSA meeting (approximately 40) had been removed from around the school.  D.A.H. asked if she knew where the flyers had gone so that he could post them back up.

23.    Assistant Principal Johnson informed D.A.H.'s parent that Principal Sayers had spoken to administrative staff about the flyers earlier that morning and that a staff person who misunderstood that discussion had confiscated and removed the flyers.  Indeed, Principal Sayers emailed staff that morning about the right to equal access and the process for approving a student club.

8

24.    Because removal of the flyers had been based on a misunderstanding, Assistant Principal Johnson authorized the library's media center to reprint 40 color copies of the flyer and cover the costs.  D.A.H. picked up the flyers once they had been printed.

25.    After having the flyers reprinted, D.A.H. and other students posted the flyers advertising the club and its first meeting.  Shortly after posting the flyers, Assistant Principal Taurus Felton told D.A.H. that the flyers had to come down because the club was no longer approved.  Other non-curricular clubs, however, were allowed to post meeting announcements.

26.    Assistant Principal Taurus Felton also informed Anthony Hamley during eighth period that the club was no longer approved.  He told Hamley that Sayers wanted to meet with him after school.  Sayers met with Hamley and told him that the HHS YDSA student club was no longer approved.  Sayers was unable to explain to Anthony Hamley the reason for revoking YDSA's approval and indicated that the decision to revoke club approval had been made at the district level.

27.    On September 16, 2025, Sayers also met with D.A.H.  She told him that YDSA was no longer an approved club.  Sayers said that the decision to revoke approval was coming from the central office.  As a result, HHS YDSA would not be allowed to meet on HHS's campus on September 26 or any other time, or to post flyers promoting the club.

28.    Upon information and belief, Superintendent Maddox was involved in and/or directed the decision to revoke YDSA's approval because he disagreed with the content of its speech and/or its viewpoint.

## B.    NON-CURRICULAR STUDENT GROUPS

29.    HHS requires clubs to be approved in order to meet or advertise on campus.  If a club is not approved, it may not use school facilities and may not post flyers at school.  To be approved, a club must submit signatures from 15 students and have a faculty sponsor.  On information and belief, there are no other requirements for a club to be approved.

30.    Defendants have approved many other non-curricular student clubs. The largest approved non-curricular student club is called First Priority Hoover High School (FPHHS).  FPHHS is a faith-based student led club.  FPHHS provides training for students to learn how to lead meetings, share their faith stories, and invite others to join the club and their local church.  FPHHS is a chapter of First Priority which, according to its website, is an "organization that works in the community as a strategic partnership of churches, ministers, business people, educators, parents and students who are concerned about the moral and spiritual well-being of students in Alabama."  According to First Priority, the organization helps "to train and mentor future leaders, provide positive peer groups for students on elementary, intermediate,

middle and high school campuses across the area, facilitate school-wide assemblies to fight drug and alcohol abuse, and much more."

31.     FPHHS is allowed to reserve space at HHS to host meetings and events. FPHHS is allowed to post flyers or posters announcing its meetings and encouraging HHS students to attend and learn about FPHHS.  FPHHS has also been allowed to advertise its meetings and events on television monitors used at HHS for internal announcements.

32.     The Fellowship of Christian Athletes (FCA) also has an approved non-curricular student club at HHS.  The FCA-HHS is a Bible study or devotion club for student athletes.  The student-led club seeks to strengthen faith through sports.

33.     FCA-HHS is allowed to reserve space at HHS to host meetings and events.  FCA-HHS is allowed to post flyers or posters announcing its meetings and encouraging HHS students to attend and learn about FCA.  FCA-HHS has also been allowed to advertise its meetings and events on television monitors used at HHS for internal announcements.

34.     In October 2025, Defendants HCS, Maddox and Sayers approved a Hoover High School Club America chapter, a Turning Point USA (TPUSA) youth organization.  TPSUA's Club America website states that "With 1,200+ high school chapters and counting, Club America is the leading youth movement for freedom-loving American values.  We empower bold student leaders to promote free thinking,

engage in grassroots activism, and bring their beliefs to life—both on and off campus." *See* https://www.clubamerica.com/.  On the same website promoting Club America, TPUSA states that its "mission is to identify, educate, train, and organize students to promote the principles of fiscal responsibility, free markets, and limited government." *Id.*

35.    According to its website, TPUSA's Club America serves "to empower the patriotic leaders of tomorrow.  Students who lead Club America chapters will be empowered to build strong networks, spearhead impactful initiatives, help students register to vote, and inspire meaningful conversations about the foundations of a free society."  https://www.clubamerica.com/about.  TPUSA states on its Club America website that "All students who believe in American exceptionalism, the importance of constitutional rights, and standing for freedom are encouraged to get involved! We strive to educate, empower, and organize student leaders who will carry these principles forward.  Together, we are shaping the next generation of trailblazers, innovators, and leaders." *Id.*

36.    According to its website, TPUSA provides "activism grants to students and student clubs who wish to organize pro-free market activism initiatives on their high school campus."  https://www.clubamerica.com/resources. TPUSA promotes "activism" kits to "elevate campus activism" on its Club America website.  These

kits focus on various political and social topics such as voter registration, promoting a particular viewpoint on the Second Amendment, and the environment.

37.    TPUSA also makes available resources through its Club America website to high school chapters.  TPUSA's "Activism Theme Library" provides access to presentations, themed games, recommended publications, and activity sheets that each chapter can use at its meetings to help students understand TPUSA's "activism themes." These activism themes include, among others, (i) "Free the First" which discusses the First Amendment, (ii) "Taxes are Shady" which promotes the idea that taxation is theft and that taxing the rich is an inherently flawed concept, (iii) "Always Love America" which advocates "American Exceptionalism", (iv) "Socialism Sus" which includes a criticism of democratic socialism, (v) "Thankful for Capitalism" which promotes the ideas of free market capitalism and includes a rebuttal of Representative Alexandria Ocasio-Cortez's critique of free market capitalism and (vi) "Register to Vote" which includes material for "Gen Z" conservatives and how chapters can encourage voting. *Id*.

38.    Hoover High School's Club America chapter is a non-curriculum student led club. As a result of receiving club approval, Club America/Turning Point USA is allowed to reserve space at HHS to host meetings and events.  Club America/Turning Point USA is also allowed to post flyers or posters announcing its meetings and encouraging HHS students to attend and learn about its mission.

Indeed, according the TPUSA's high school website "Activism is an important part of TPUSA chapters spreading their ideas to others and making a difference.  Check out our activism sheet for ideas on what your chapter can do or think of your own ideas to make sure others know about the dangers of socialism."

### C.    YOUTH DEMOCRATIC SOCIALISTS OF AMERICA CLUB

39.    DSA, through its student outreach section YDSA, promotes an agenda that empowers working class members.  DSA's platform states that working people should run both the economy and society democratically to meet human needs, not to make profits for a few.

40.    Like TPUSA and Club America, DSA and YDSA chapters organize around various issues, striving to run strategic campaigns based on local conditions.  Nationally, DSA and YDSA also provide resources and support for work done as part of their major priorities as democratically voted upon.  These priorities include: (1) building an electoral strategy the gives independent political power to hold elected officials accountable to people they represent and not the donor class; (2) supporting a movement for strong labor unions and countering the narrative that labor unions are unnecessary, undemocratic or ineffective; (3) addressing the climate crisis through building worker support for the Green New Deal.

41.    The purpose of YDSA is to organize students to become involved at their schools and in their communities in order to advocate and mobilize around

policies that improve the lives of working people.  The interests of equal treatment, equal access and free exercise of First Amendment speech and associational rights to organize and actively campaign for the policies and programs that support working people are clearly germane to the purpose of DSA and YDSA.

42.    YDSA is the youth and student section of DSA and a national organization of student chapters.  To become an official chapter, students must submit an application to the YDSA committee of DSA.  Students pay dues to the DSA, which then allocates resources to each chapter.  DSA provides materials to students such as buttons, stickers, banners and posters to help build their chapter and recruit on campus.  YDSA chapters also have access to videos and written materials that help students promote the priorities of their chapter.

## D.    INJURIES TO PLAINTIFFS

43.    By revoking the approval of a YDSA chapter at Hoover High School while authorizing other non-curricular clubs, Defendants have injured the student members of HHS-YDSA including D.A.H., as well as other students who wish to become YDSA or DSA members.  Because Defendants directly or indirectly through an agent revoked YDSA's recognition, D.A.H. and other YDSA members cannot meet on campus or advertise their club to other students at the school, making it harder for club members to participate and far more difficult to recruit new members. When they revoked HHS-YDSA club approval, Defendants violated DSA and HHS-

15

YDSA members' right to associate with other students, their rights to advocate for policies in the public form created by Hoover High school, and their statutory right to equal access.

44.    Depriving students who want to join the HHS-YDSA club of the opportunity to do so, or making it more difficult for them to do so, harms their educational experience in myriad ways.  Clubs are important and enrich students' educational experience by acting as support groups, fostering knowledge and discussion of the club's subject matter, promoting civic engagement, improving social interaction skills, and providing opportunities for leadership.  These experiences also benefit students in applying for college and seeking employment.

45.    Because Defendants revoked HHS-YDSA club approval and have prohibited DSA's youth organization (i.e. YDSA) from meeting at, accessing, and promoting YDSA at Hoover High School, DSA has lost student membership and the ability to recruit students to join YDSA.  This injury is both financial in the form of lost dues and organizational in the form of decreased membership.  Because many members of high school YDSA clubs go on to become members of college YDSA clubs and DSA itself, the impact of this loss will continue into the future.

46.    Additionally, the decision to revoke HHS-YDSA's club approval injured DSA's reputation.  The revocation sent the message to students that DSA is not a legitimate organization and that its positions and viewpoints are to be avoided.

Students supporting DSA must meet off-campus and cannot promote these meetings on Hoover High Schools premises.

47.    DSA's youth and student organizer has advised D.A.H. and other students on how to counter the unlawful revocation of the Hoover High School YDSA club.  Absent the revocation, he would not have had to spend time providing such advice.

48.    DSA has been injured, and brings this suit, on its own behalf. Defendants' revocation of club approval has injured DSA financially, harmed DSA's reputation, and made it more difficult for DSA to recruit more members and to involve more students in DSA.

49.    DSA also brings this suit on behalf of its members, including but not limited to D.A.H., based on injuries to them.  The interests DSA seeks to protect through this lawsuit are germane to the organization's purposes.  And the claims asserted in this Complaint do not require the participation of each student member and/or student participant in DSA, because Plaintiffs primarily seek injunctive relief and the focus of the litigation will be on Defendants' actions.

50.    HHS-YDSA has been injured, and brings this suit, on its own behalf. Defendants' revocation of club approval has harmed HHS-YDSA's reputation, and made it more difficult for HHS-YDSA to recruit more members, to involve more students, and to operate as a club.

51.    HHS-YDSA also brings this suit on behalf of its members, including but not limited to D.A.H., based on injuries to them.  The interests HHS-YDSA seeks to protect through this lawsuit are germane to the organization's purposes.  And the claims asserted in this Complaint do not require the participation of each student member and/or student participant in HHS-YDSA, because Plaintiffs primarily seek injunctive relief and the focus of the litigation will be on Defendants' actions.

## LEGAL CLAIMS

### COUNT I

### (Section 1983 -Equal Access Act, 20 U.S.C. §§ 4071-4074)

52.    Plaintiffs restate and incorporate the factual allegations in paragraphs 11 through 51.

53.    The Equal Access Act makes it unlawful for any public secondary school that receives Federal financial assistance and which offers a "limited open forum" to deny equal access or a fair opportunity to or discriminate against any students who wish to conduct a meeting within that limited open forum on the basis of religious, political, philosophical or other content of the speech of such meetings. *See* 20 U.S.C. § 4071(a).

54.    Hoover High School is a public secondary school that receives federal financial assistance.  Hoover City Schools receive federal funding for programs in each of the schools it operates, including HHS.  For example, HHS received federal

18

funding in FY 2025 for its Child Nutrition program and its exceptional/special education programs.

55.    Hoover High School also has a limited open forum under the EAA.    A public secondary school has a limited open forum whenever such school grants an offering to or opportunity for one or more non-curriculum related student groups to meet on school premises during noninstructional time.    *See* 20 U.S.C. § 4071(b). Hoover High School has a limited open forum that grants access to or provides an opportunity for one or more non-curriculum related students groups/clubs to meet on school premises and/or to promote their clubs on school premises as described in paragraph 11 through 51 of this complaint.

56.    Defendants, acting under color of state law and in violation of 42 U.S.C. § 1983, have deprived the Plaintiffs of the rights, privileges or immunities secured by the Equal Access Act.    As alleged in paragraphs 11 through 51, Defendants (i) discriminated against the Plaintiffs, (ii) denied them equal access, and/or (iii) refused to offer Plaintiffs a fair opportunity to promote and conduct YDSA meetings within HHS's limited open forum on the basis of the political or philosophical content of the speech at such meetings.

57.    Upon information and belief, members of Defendant Hoover City Board of Education were aware of and ratified the decision to revoke HHS-YDSA's

19

club approval and the privileges associated with such status because some parents vociferously opposed granting HHS-YDSA access to HHS limited open forum.

58.    Defendants' denial of rights, privileges or immunities provided under the Equal Access Act injured the Plaintiffs and caused monetary damage in at least a nominal amount.

59.    Defendants' decision to deny Plaintiffs DSA and HHS-YDSA and their members access on equal terms to HHS's facilities puts them at a material disadvantage because DSA and YDSA must expend additional resources to maintain the HHS-YDSA club and may not advertise or meet on the HHS premises. DSA representatives must make alternative arrangements so that HHS YDSA members can meet.

## COUNT II

### (Section 1983 – First Amendment Right of Free Speech)

60.    Plaintiffs restate and incorporate the factual allegations in paragraphs 11 through 51.

61.    HHS has established a limited public forum under the First Amendment in that it allows student groups or clubs to promote, meet, and discuss religious, political, philosophical and/or social issues. Defendants have policy and/or process of approving student-led clubs and granting student led clubs access to school facilities and promoting their club.

62.     Plaintiffs sought access to HHS's limited open forum when they applied for club approval for purposes of promoting, meeting and discussing the issues important YDSA members.  Plaintiffs were granted approval.  Defendants then revoked the approval and denied Plaintiffs access to the limited open forum because of the viewpoint of HHS-YDSA and some of its members.

63.     Upon information and belief, Defendant Maddox insisted that HHS revoke approval of YDSA because he disagreed with the content of its speech and/or viewpoints.  Defendant Sayers revoked HHS-YDSA approved club status, ordered the confiscation and removal of flyers promoting HHS-YDSA and prohibited reposting of HHS-YDSA's flyers because of the club's viewpoint.

64.     No other student club was treated the same way as HHS-YDSA.  The reason HHS-YDSA was denied access to HHS's facilities on the same terms as other student club is because of the content of HHS-YDSA speech and the viewpoint it expresses.  Defendants' decision to approve Club America-Turning Point USA highlights the viewpoint discrimination against HHS-YDSA given that Club America-Turning Point USA promotes political and social positions that conflict with the views and positions advocated by HHS-YDSA.

65.     Upon information and belief, Hoover City Schools and Hoover City Board of Education were aware of, endorsed, directed and/or ratified the actions of

Defendants Maddox and Sayers that deprived Plaintiffs of their First Amendment rights of free speech.

66.    The individual Defendants (as public employees of Hoover City Schools) were acting under color of state law when they violated Plaintiffs' First Amendment rights of free speech.  The institutional Defendants Hoover City Board of Education and Hoover City Schools are public entities and can only take actions under color of state law.  Defendants Maddox and Sayers' decision to revoke YDSA's club approval was pursuant to a policy or process of the institutional Defendants.

67.    Defendants' content and viewpoint-based discrimination deprived the Plaintiffs of the rights, privileges or immunities secured by the First Amendment to the United States Constitution and violated 42 U.S.C. § 1983.

68.    Defendants' denial of Plaintiff's First Amendment free speech rights in violation of Section 1983 injured the Plaintiffs and caused monetary damage in at least a nominal amount.

## COUNT III

### (Section 1983 – First Amendment Right of Association)

69.    Plaintiffs restate and incorporate the factual allegations in paragraphs 11 through 51.

70.    DSA and its youth organization YDSA are First Amendment expressive associations.  As noted on its website, YDSA is a space in which students, campus workers, and community youth can learn from one another and be empowered to fight against the most pressing social justice issues impacting our communities.  YDSA engages in public and private expressive activity and also provides written materials and other items to help unofficial clubs like HHS-YDSA establish an official chapter and recruit other students on campus.

71.    HHS-YDSA is a group of Hoover High School students who meet regularly to organize around the priorities of the group.  HHS YDSA is not an officially recognized YDSA chapter but an informal group that seeks official chapter status.  HHS-YDSA was in the process of seeking official chapter status before its club status was revoked.

72.    Like other non-curricular clubs and organizations, DSA and HHS-YDSA's members sought access to HHS's facilities to conduct and advertise its meetings because that is where students spend substantial amounts of time and where students socialize and interact with each other and teachers.

73.    Defendants' decision to revoke HHS-YDSA's status as an approved student club substantially burdened Plaintiffs' exercise of their First Amendment right of association.

74.    The individual Defendants (as public employees of Hoover City Schools) were acting under color of state law when they violated Plaintiffs' First Amendment rights of association.  The institutional Defendants Hoover City Board of Education and Hoover City Schools are public entities and can only take actions under color of state law. Defendants Maddox and Sayers' decision to revoke YDSA's club approval was pursuant to a policy or process of the institutional Defendants.

75.    Defendants' actions as described herein deprived the Plaintiffs of the rights, privileges or immunities secured by the First Amendment to the United States Constitution and violated 42 U.S.C. § 1983.

76.    Defendants' denial Plaintiff's First Amendment rights of association in violation of Section 1983 injured the Plaintiffs and caused monetary damage in at least a nominal amount.

## COUNT IV

### (Section 1983 – Equal Protection)

77.    Plaintiffs restate and incorporate the factual allegations in paragraphs 11 through 51.

78.    Defendants, acting under color of state law and in violation of 42 U.S.C. § 1983, deprived Plaintiffs of the rights, privileges or immunities secured by the Equal Protection Clause of the Fourteenth Amendment of the United States

Constitution because they treated HHS-YDSA, DSA, and their members differently than similarly situated student groups and their members, based on their political views and expression. As noted above, Defendant Maddox, upon information and belief, directed the revocation of HHS-YDSA Unlike the favored faith-based or politically conservative student clubs/groups identified in paragraphs 11 through 49, Plaintiffs have been denied access to HHS's facilities for purposes of advertising their group and conducting meetings to discuss important political and social issues and to organize and recruit students to discuss and work on important political and social problems.

79.    Defendants were acting pursuant to policy or process that resulted in the denial of Plaintiffs' right to equal protection. Defendants had a policy or process for approving student led clubs and though initially approving Plaintiffs' application for HHS-YDSA, Defendants relied on the same policy or process to revoke previously granted approval.

80.    Defendants' denial of Plaintiffs' Fourteenth Amendment right to equal protection, in violation of Section 1983, injured Plaintiffs and caused monetary damage in at least a nominal amount.

## PRAYER FOR RELIEF

81.    WHEREFORE premises considered, Plaintiffs respectfully request that the Court enter an order:

(a)      for a preliminary and permanent injunction restraining and enjoining Defendants and their officers, agents, employees and all other persons or entities in active concert or privity or participation with them from directly or indirectly preventing Plaintiffs' equal access to the premises and facilities of Hoover High for meeting and advertising meetings during non-instructional time and directly or indirectly denying Plaintiffs access to or use of school facilities on a basis equal to other non-curriculum related student groups;

(b)      declaring that Plaintiffs have rights under the Equal Access Act and/or the First and Fourteenth Amendments to the United States Constitution to use HHS's facilities to promote their club and meet with other students and that Defendants' actions violated these rights;

(c)      prohibit Defendants from retaliating against the named plaintiffs, faculty, family members or any persons associated with HHS-YDSA;

(d)      payment of damages to the extent established, and/or in at least a nominal amount;

(e)      payment of pre-judgment interest on the damages awarded;

(f)      payment of reasonable attorneys' fees plus costs and expert witness fees incurred in the prosecution of this action pursuant to, and without limitation, 42 U.S.C. § 1988; and

(g)    such other equitable or legal relief the Court deems appropriate and necessary, based on the evidence presented at trial, to fully remedy any and all violations of applicable law.

Respectfully submitted,

/s/*Richard P. Rouco*
Richard P. Rouco
Zakary Pearsall
QUINN, CONNOR, WEAVER,
    DAVIES & ROUCO LLP
Two North Twentieth Street
2 – 20th Street North, Ste. 930
Birmingham, AL  35203
(205) 870-9989
rrouco@qcwdr.com
zpearsall@qcwdr.com


Stacey M. Leyton
Barbara J. Chisholm
*Pro hac vice forthcoming*
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
(415) 421-7151
sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com